UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

ANNIE BARNES, as next friend of )
Corey Tarvin, )
 )
      Plaintiffs, )
 )
v. ) No.     1:26-CV-121-TAV-CHS
 )
BLEDSOE COUNTY FACILITY, )
WARDEN BRETT COBBLE, )
OFFICER KASE, OFFICER )
BACKSTER, SGT. OWENS, and )
OFFICER BLOODWORTH, )
 )
      Defendants. )

## MEMORANDUM OPINION AND ORDER

Annie Barnes, acting as next friend of Plaintiff Corey Tarvin, a legally blind Tennessee Department of Correction ("TDOC") prisoner,[1] filed a pro se complaint pursuant to 42 U.S.C. § 1983 challenging various incidents during Plaintiff's confinement [Doc. 1], a motion for leave to proceed *in forma pauperis* [Doc. 4], a motion for injunctive relief [Doc. 6], and a notice that the Court construes as a supplement to the complaint [Doc. 7]. For the reasons set forth below, the motion for leave to proceed *in forma pauperis* [Doc. 4] will be **GRANTED**, the motion for injunctive relief [Doc. 6] will be **DENIED**, and this action will be **DISMISSED** because the complaint and supplement fail to state a claim upon which relief may be granted under § 1983.

---

[1] For purposes of screening the complaint, the Court assumes without deciding that Ms. Barnes may proceed herein as Plaintiff's next friend pursuant to Rule 17(c) of the Rules of Civil Procedure.

## I. FILING FEE

As the motion for leave to proceed *in forma pauperis* [Doc. 4] demonstrates that Plaintiff cannot pay the filing fee upfront, the motion [Doc. 4] is **GRANTED**. Plaintiff is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Chattanooga, Tennessee, 37402, as an initial partial payment, whichever is the greater of: (a) 20% of the average monthly deposits to Plaintiff's inmate trust account; or (b) 20% of the average monthly balance in his inmate trust account for the 6-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit 20% of his preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350.00 has been paid to the Clerk. 28 U.S.C. §§ 1914(a), 1915(b)(2).

To ensure compliance with this fee collection procedure, the Clerk is **DIRECTED** to provide a copy of this memorandum opinion and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. INJUNCTIVE RELIEF

In her motion for injunctive relief, Ms. Barnes states that (1) Plaintiff is blind and cannot defend himself or navigate punitive segregation; (2) after the filing of this lawsuit, Officers Backster and Bloodworth denied Plaintiff food on their shift, in support of which

2

she states Plaintiff did not receive dinner on May 17, 2026; and (3) the facility has prevented Plaintiff from using tablet messaging so that he cannot report violations [Doc. 6, p. 1]. Because Ms. Barnes filed the motion seeking injunctive relief before any defendant has been served, the Court treats it as a motion for a temporary restraining order ("TRO").[2] *See* Fed. R. Civ. P. 65(b).

In determining whether to grant a request for preliminary injunctive relief, courts balance four factors: (1) whether the plaintiff "has shown a strong likelihood of success on the merits;" (2) whether the plaintiff will suffer irreparable injury in the absence of an injunction; (3) whether the injunction will cause substantial harm to others; and (4) whether the injunction would serve the public interest. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citations omitted). Injunctive relief is "an extraordinary remedy never awarded as of right." *See Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Such relief "should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*, 305 F.3d at 573 (citations omitted).

---

[2] A preliminary injunction requires notice to the adverse party, while the purpose of a TRO is to preserve the status quo until an adversarial hearing may be held for a preliminary injunction. Fed. R. Civ. P. 65(b)(3); *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 438–39 (1974). Thus, as Plaintiff filed his motion for injunctive relief prior to service of process on any defendant, the Court construes it as a motion for a TRO. Fed. R. Civ. P. 65(a), (b). But the Court notes that the factors to be considered in determining whether a TRO or preliminary injunction should issue are the same. *See, e.g., Workman v. Bredesen*, 486 F.3d 896, 904–05 (6th Cir. 2007).

First, the record does not suggest that Plaintiff has a strong likelihood of success on the merits in this action. Instead, as set forth below, this action will be dismissed because the complaint fails to plausibly allege a violation of Plaintiff's constitutional rights.

As to the second factor, Ms. Barnes has not established that Plaintiff will suffer irreparable injury without the requested TRO. While Ms. Barnes states that Plaintiff cannot navigate punitive segregation or defend himself because of being blind, she does not set forth any facts suggesting that Plaintiff currently faces any threat from being housed with other inmates, or that he faces any danger of irreparable harm in punitive segregation. Nor does Ms. Barnes set forth any facts from which the Court can plausibly infer that Plaintiff's alleged inability to eat during one shift is causing him irreparable harm.[3] As such, the second factor also weighs against the Court granting Plaintiff injunctive relief.

As to the third factor, nothing in the record suggests that granting Plaintiff the requested TRO would cause substantial harm to others.

---

[3] Moreover, to the extent that Ms. Barnes intended to state a claim for retaliation based on the assertion that Officers Backster and Bloodworth did not feed Plaintiff on their shift after the filing of this action, this does not state a plausible retaliation claim. Specifically, Ms. Barnes does not set forth any facts to support a plausible inference that these officers even know about this lawsuit, in which they have not been served, much less that any facts supporting a plausible inference that the filing of this lawsuit caused these officers to not feed him on their shift. As such, this allegation is conclusory and fails to state a plausible retaliation claim. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (providing that a § 1983 retaliation claim requires Plaintiff to plausibly allege that: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."); *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005). "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987))); *Skinner v. Bolden*, 89 F. App'x 579, 579–80 (6th Cir. 2004) ("Conclusory allegations of temporal proximity are not sufficient so show a retaliatory motive.").

4

As to the fourth factor, district court intervention in prison operations without a compelling reason is against public policy. *Glover v. Johnson*, 855 F.2d 277, 285–87 (6th Cir. 1988) (setting forth public policy concerns regarding court interference with jail administration and instructing that courts should not "attempt to administer any portion of a state correctional system program except in the most compelling situations"). Ms. Barnes has not set forth a compelling reason for the Court to grant the requested TRO.

Accordingly, the motion for injunctive relief [Doc. 6] is **DENIED**.

## III. COMPLAINT SCREENING

### A. Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim and allegations that do not raise a plaintiff's right to relief "above a speculative level" fail to state a plausible claim. *Id.* at 681; *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim under 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

## IV.  ALLEGATIONS

According to the complaint, which only Ms. Barnes signed, Plaintiff is legally blind, and the facility housing him "does not provide a safe environment or reasonable accommodations for [his] disability" [Doc. 1, p. 4]. Plaintiff has therefore requested to be held in "the hole," but Ms. Barnes states that prison officials deny him access to commissary and the courts in this placement [*Id.*]. To support this assertion, the complaint states that while Plaintiff was "on punitive," he ordered food and hygiene items from commissary, but when he was out of punitive and could have his commissary order, an officer had already sent the commissary order back [*Id.*]. According to the complaint, Plaintiff cannot eat or have hygiene items during punitive segregation because unspecified officers "put stuff in his food, water, k-2 or who know[]s," which the complaint states is because Plaintiff reported the officer on shift [*Id.*]. Ms. Barnes also states that the prison has denied Plaintiff access to the Court "by not allowing him to sign" an unspecified document, presumably the complaint [*Id.* at 5].

6

Ms. Barnes further states that she has repeatedly notified Warden Brett Cobble about the violations of Plaintiff's rights through letters, but he has not remedied those violations [*Id.* at 6]. Ms. Barnes also indicates that she called about the alleged violations, after which unspecified officers retaliated against Plaintiff [*Id.*]. Ms. Barnes additionally claims that Plaintiff asked Officer Scholtz to help him with his phone list and commissary form on the tablet, "he was denied help" [*Id.*]. Moreover, Plaintiff received sour milk on one occasion, and Ms. Barnes called and spoke to "Captain James" about the sour milk and the denial of help to Plaintiff, but "Captain James" said he was not concerned about that, as he has 900 inmates in his care [*Id.* at 5–6]. Additionally, Officer Bloodworth once served Plaintiff a food tray but kept the apple from Plaintiff's tray [*Id.* at 6]. An unspecified officer also had Plaintiff sign documents that Plaintiff thought would help him obtain his medical records, but Plaintiff still does not have those records [*Id.*].

Ms. Barnes further claims that an unspecified officer took Plaintiff's property and when Plaintiff got it back the next day, his television was missing [*Id.* at 7]. She also claims that Plaintiff previously lost items in similar incidents during his confinement [*Id.*].

On one occasion, Plaintiff was denied access to a tablet [*Id.*]. On a different occasion, Sergeant ("Sgt.") Owens harassed Plaintiff all day, threatened to taze Plaintiff, and threatened not to feed Plaintiff the next day [*Id.*]. Plaintiff was also denied hygiene for a month [*Id.*].

In a notice that the Court liberally construes as a supplement to the complaint, Ms. Barnes states that although punitive segregation cannot exceed 30 days, Plaintiff is in "a loophole" because when prison officials release him to a shared cell after he has been in punitive segregation, he "understandably refu[s]e[s]," and prison officials therefore write

7

him up for refusing an order in a disciplinary report [Doc. 7, p. 1]. Ms. Barnes states that this cycle "keep[s] a disabled inmate in indefinite isolation [in] violation of the spirit of TDOC policy" and has been occurring for more than two years [*Id.*]. Ms. Barns also states that, while in punitive segregation, Plaintiff's phone calls and tablet use are heavily restricted and the facility implements monthlong communication blackouts, which she states are dangerous because Plaintiff cannot access standard grievance forms [*Id.*]. Ms. Barnes then states that Plaintiff has been "denied disability accommodation" and has been in punitive segregation with no phone communication for four weeks [*Id.*]. Ms. Barnes further claims that Plaintiff refuses a shared cell assignment because (1) he is blind and cannot protect himself, and (2) two years ago, a cellmate attacked Plaintiff and an officer then left Plaintiff handcuffed in a shower for eleven hours [*Id.* at 2].

The complaint names the Bledsoe County Correctional Complex ("BCCX"), Warden Cobble, Officer Kase, Officer Backster, Sgt. Owens, and Officer Bloodworth as defendants [Doc. 1, pp. 1, 3]. It requests injunctive relief in the form of prescribing corrective lenses for Plaintiff, providing Plaintiff all meals and tablet access, stopping the alleged threats and rights violations affecting Plaintiff, allowing Plaintiff to order commissary, moving Plaintiff to a special needs facility or other protected custody, providing Plaintiff medical care for his vision, and providing Plaintiff medical records [*Id.* at 5]. The portion of the complaint designated for requests for relief also lists "[l]oss of property, mental health, struggles, fear, [and] trauma[] from the civil rights violation" [*Id.*].

## V. ANALYSIS

### A. Americans with Disabilities Act

The complaint alleges that incidents in the complaint violated Plaintiff's rights under the Americans with Disabilities Act ("ADA"). Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines a "public entity" as "any State or local government; [or] any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]" 42 U.S.C. § 12131(1). The Court construes this claim against the BCCX, as it is the only defendant that could be liable for this claim. *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) (providing that "the ADA [does not] impose liability upon individuals") citing 29 U.S.C. § 794(b) and 42 U.S.C. § 12131(1))). The ADA requires a plaintiff to establish, among other things, that he has a disability that was the sole reason for discrimination against him. *See Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).

While the complaint contains conclusory assertions that Plaintiff is not provided ADA compliant housing or the ability to sign legal forms, it provides no facts to support either of these assertions.[4] *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Nor does

---

[4] The Court further takes judicial notice that Plaintiff drafted and signed legal filings in other actions in this District during the time in which he claims he has not been able to sign legal forms. *See*, *e.g.*, *Tarvin v. State of Tennessee, et al.*, 1:14-CV-252, Doc. 33 (signed by Plaintiff on April 2, 2026).

the complaint provide any facts from which the Court can plausibly infer that Plaintiff is being denied any benefit solely due to his visual impairment. As such, the complaint does not state a cognizable claim for violation of the ADA, and this claim is **DISMISSED**.

**B.     Bledsoe County Correctional Complex**

Also, to the extent Plaintiff has sued the Bledsoe County Correctional Complex for other violations of his constitutional rights under § 1983, such claims are not cognizable herein. *See Anderson v. Morgan Cnty. Corr. Complex*, No. 15-6344, 2016 WL 9402910, *1 (6th Cir. Sept. 21, 2016) (finding that a state prison is not a person that may be liable under § 1983). Accordingly, the complaint does not state a claim upon which relief may be granted under § 1983 as to BCCX, and it is **DISMISSED**.

**C.     Officer Kase and Officer Backster**

Plaintiff's complaint does not allege that Officer Kase or Officer Backster were personally involved in any incident in his complaint. As such, it fails to state a plausible claim for § 1983 relief against them. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted); *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155–57 (1978))). As such, these defendants are **DISMISSED**.

**D.     Officer Bloodworth**

As set forth above, Plaintiff's only allegation against Officer Bloodworth in the

10

complaint is that this Defendant took an apple off one of Plaintiff's food trays.  However, nothing in the complaint suggests that this rose to the level of a constitutional violation.  *Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977) (providing that where a prisoner's diet is sufficient to sustain the prisoner's good health, no constitutional right has been violated).  As such, this defendant is also **DISMISSED**.

### E. Sgt. Owens

Plaintiff alleges that Sgt. Owens harassed him "all day," threatened to taze him, and threatened not to feed him the next day.  However, as "[a]llegations of threats and verbal abuse do not state cognizable claims under § 1983," none of these allegations rise to the level of a constitutional violation.  *Faulkner v. Davidson Cnty. Sheriff's Off.*, No. 3:14-MC-740, 2014 WL 3723205, at *2 (M.D. Tenn. July 24, 2014) (citing *Williams v. Gobies*, 211 F.3d 1271, 2000 WL 571936, at *1 (6th Cir. May 1, 2000)); *Mattingly v. Barnes*, No. 3:14-CV-591-J-32JBT, 2018 WL 1496929, at *14 (M.D. Fla. Mar. 27, 2018), *aff'd sub nom. Mattingly v. Duval Cnty. Jail*, 777 F. App'x 971 (11th Cir. 2019) (noting "Plaintiff's allegation that Defendant Khan threatened to 'taze' him" failed to state a claim, as "verbal threats and harassment are generally not actionable under § 1983"); *Hamilton for J.H. v. Fort Wayne*, No. 16-CV-132, 2017 WL 5467038, *8 (N.D. Ind. 2017) ("The Court finds that a verbal warning about a particular use of force that never transpires is not the same as actually using the force.").

As such, Sgt. Owens is **DISMISSED**.

### F. Warden Cobble

The complaint's only specific allegation against Warden Cobble is that Ms. Barnes informed this defendant of the alleged violations of Plaintiff's rights during his

11

confinement, but Warden Cobble has not remedied those complaints. However, this does not allege a constitutional violation. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that knowledge of a prisoner's grievance and failure to respond to or remedy the complaint was insufficient to impose liability on supervisory personnel under § 1983 and holding "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act") (citation and internal quotation marks omitted).

Also, to the extent Plaintiff seeks to hold this Defendant liable under § 1983 for the acts of other prison employees based on his supervisory position, that is not a cognizable claim. *Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Troutman v. Louisville Metro Dep't of Corrs.*, 979 F.3d 472, 487–88 (6th Cir. 2020) (providing that "at minimum a plaintiff must show that a supervisory official at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending subordinate" in order for the supervisory official to be liable for a subordinate's acts under § 1983) (internal quotation marks and citations omitted).

Accordingly, the complaint fails to state a plausible claim for violation of § 1983 as to Warden Cobble, and he will be **DISMISSED**.

## VI.    CONCLUSION

For the reasons set forth above:

1.    The motion for leave to proceed *in forma pauperis* [Doc. 4] is **GRANTED**;

2.    Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3.  The custodian of Plaintiff's inmate trust accounts is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4.  The Clerk is **DIRECTED** to provide a copy of this memorandum and order and the accompanying judgment order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5.  The motion for injunctive relief [Doc. 6] is **DENIED**;

6.  Even liberally construing the complaint filings in Plaintiff's favor, they fail to state a claim upon which relief may be granted under § 1983;

7.  Accordingly, this action will be **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

8.  The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

AN APPROPRIATE JUDGMENT ORDER WILL ENTER.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

13